United States District Court
Southern District of Texas
**ENTERED**
March 09, 2018
David J. Bradley, Clerk

# UNITED STATES DISTRICT COURT
## FOR THE
## SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| LATASHA MATHIEW, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:17-CV-3140 |
| | § | |
| SUBSEA 7 (US) LLC | § | |
| | § | |
| *Defendant*. | § | |

## REPORT AND RECOMMENDATION ON DEFENDANT'S TCPA MOTION TO DISMISS PLAINTIFF'S ORIGINAL COMPLAINT

Before this Court is Defendant's motion, asking to dismiss Plaintiff's Title VII lawsuit based on the application of the Texas Citizens Participation Act ("TCPA"). Def.'s Mot. to Dismiss, ECF No. 9. After reviewing the Parties' arguments and the applicable law, the Court has determined that Defendant has failed to show the case falls under the TCPA, and even if it does, the TCPA is inapplicable to Plaintiff's federal claim. Accordingly, the Court recommends that Defendant's motion be denied.

## I.   OVERVIEW

### A.  Plaintiff's Title VII Claims

Plaintiff Latasha Mathiew ("Plaintiff" or "Matthiew") filed this suit claiming she was denied training and advancement opportunities, because of her race, when she was employed with Subsea 7 (US) LLC ("Defendant" or "Subsea"). She further contends that when she complained of this treatment, Subsea terminated her employment. She alleges discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964.[1]

---

[1] 42 U.S.C. § 2000e et seq.

In her Original Complaint, Plaintiff claims she was hired to be a Cost Controller for Subsea in June 2013. Pl.'s Orig. Compl. 2, ECF No. 1. After approximately four months, Subsea introduced a new cost control model. *Id.* Mathiew alleges that over a five month period, she asked, both orally and in writing, to be trained on the new cost control model. *Id.* at 2-3. Eventually, she filed a complaint with the human resources department at Subsea complaining that black employees, including Plaintiff, were being denied training on the new system, and also were denied new project assignments. *Id.* at 3. According to Plaintiff, the director of human resources denied the lack of assignments was racially motivated and developed a plan to provide her with training on the new cost control model. *Id.*

Several months later, Mathiew claims, her supervisor denied her a raise that the company had already approved. *Id.* at 4. His explanation at that time was that she was "not yet up to speed." *Id.* Mathiew contends that he relented when she pointed out that her lack of training was the subject of her complaint to human resources. *Id.* Five weeks later, she was terminated. *Id.* According to Mathiew, her supervisor initially refused to explain the reason for her termination. The human resources' representative instructed her supervisor to tell Plaintiff it was due to her performance, which he did. *Id.* Plaintiff alleges these factual allegations show discrimination because "non-black employees in the Cost Control Department were given project opportunities that [black employees] were not," and were otherwise treated differently. *Id.* at 4-5. Plaintiff further contends that, after making a "legally protected complaint about that discrimination, [she] was terminated in retaliation." *Id.* at 5.

## B.  Defendant's TCPA Motion to Dismiss Based on Protected Free Speech

In its motion to dismiss, Subsea argues that when it "verbally advised [Mathiew] that she was terminated . . . for poor performance, [told her] that her performance was not at the level

[expected of her, . . . and engaged in] internal communications . . . regarding the decision to end her employment" it was exercising a right of free speech protected under the TCPA. Def.'s Mot. to Dismiss 1, ECF No. 9. Subsea argues the TCPA mandates immediate dismissal of Plaintiff's discrimination claims. *Id.*

In her response, Plaintiff first argues that the TCPA is a state law statute that is inapplicable to the federal claims asserted in this case. Pl.'s Resp. 3, ECF No. 11. Plaintiff next argues that even if there were state law claims that had been asserted, the TCPA would be inapplicable because it conflicts with federal law. *Id.* at 4-5. Finally, Mathiew argues that if the statute is applicable, it does not cover the conduct at issue here because it is not a matter of public concern. *Id.* at 5-8. Even if it is a matter of public concern, Plaintiff insists, she has pled "clear and specific evidence of a *prima facie* case for each essential element of the claim in question." *Id.* at 8-9.

## II.    APPLICATION OF THE TEXAS CITIZEN PARTICIPATION ACT TO PLAINTIFF'S FEDERAL CLAIM

Defendant asserts it has a state law defense under the TCPA to Plaintiff's Title VII claims. The Fifth Circuit has not yet addressed this issue. Since Plaintiff's claim is based on federal, not state law, it is not apparent that the TCPA applies. Accordingly, the Court must first consider whether the Defendant established a defense under the Act and whether a TCPA defense can be asserted in a case arising under Title VII claims. To determine whether the TCPA can be asserted against a federal claim, the Court must first determine whether the state law is substantive or procedural. If the Act is procedural, it will not apply in federal court because federal procedural rules govern. If it is substantive, it will apply as long as it does not conflict with federal procedural or substantive rules.

3

### A. The Texas Anti-Slapp Statute: Defense for Free Speech Based on Matters of Public Concern

The Texas Citizen's Participation Act[2] is an Anti-SLAPP[3] statute designed to quickly dispose of lawsuits filed solely to "chill the exercise of First Amendment rights." *NCDR, L.L.C. v. Mauze & Bagby, P.L.L.C.*, 745 F.3d 742, 746 (5th Cir. 2014). It "protects citizens from retaliatory lawsuits that seek to intimidate or silence them on matters of public concern." *In re Lipsky*, 460 S.W.3d 579, 586 (Tex. 2015) (citing House Comm'n on Judiciary & Civil Juris., Bill Analysis, Tex. H.B. 2973, 82nd Leg., R.S. (2011)).

> The stated purpose of the TCPA is to
>
> encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury.

TEX. CIV. PRAC. & REM. CODE § 27.002. The Act "shall be construed liberally to effectuate its purpose and intent fully." *Id.* § 27.011.

When construing and applying the TCPA, as with other statutes, the Texas Supreme Court has instructed that courts are to look first to the Act's plain language, and if unambiguous, "interpret the statute according to its plain meaning." *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 899 (Tex. 2017) (per curiam) (citing *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015) (per curiam)). "The Legislature is presumed to have 'included each word in the statute for a purpose and that words not included were purposefully omitted.'" *Id.* (quoting *Lippincott*, 462 S.W.3d at 509). "It is a fundamental principal of statutory construction and indeed of language itself that words' meanings cannot be determined in isolation but must be

---

[2] TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001-27.011.

[3] "'SLAPP' is the commonly used acronym for a strategic lawsuit against public participation—abuse of defamation and similar causes of action to chill the defendant's participation in public controversies." *Cuba v. Pylant*, 814 F.3d 701, 704 fn.1 (5th Cir. 2016).

drawn from the context in which they are used." *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 441 (Tex. 2011); *In re Office of the Attorney Gen.*, 456 S.W.3d 153, 155-56 (Tex. 2015) (per curiam) (same).

> The Act provides:

> If a legal action is based on, relates to, or is in response to a party's **exercise of the right of free speech**, right to petition, or right of association, that party may file a motion to dismiss the legal action.

TEX. CIV. PRAC. & REM. CODE § 27.005(a) (emphasis added).

> "Exercise of the right of free speech" means a communication made in connection with a **matter of public concern**.

> *   *  *

> A "matter of public concern" includes an issue related to:

>> (A)   Health or safety;
>> (B)   Environmental, economic, or community well-being;
>> (C)   The government;
>> (D)   A public official or public figure; or
>> (E)   A good, product, or service in the marketplace.

*Id.* § 27.001(3) & (7) (emphasis added).

A key component of the TCPA is the disposition of "legal actions" that are based on a party's exercise of the right of free speech, the right to petition, or the right of association, with the remedies of expedited dismissal, cost-shifting, and sanctions. *In re Lipsky*, 460 S.W.3d at 586–87. According to the Texas Supreme Court, the goal of the TCPA is to "identify and summarily dispose of lawsuits designed only to chill First Amendment rights, [but] not . . . dismiss meritorious lawsuits." *Id.* at 589.  The Act provides a two-step procedure when a party files a motion to dismiss. *ExxonMobil Pipeline Co.*, 512 S.W.3d at 898; *see Pylant*, 814 F.3d at 711. On filing a motion to dismiss, the Defendant bears the burden to show, by a preponderance of the evidence, that the Plaintiff's claim is based on or relates to the Defendant's

exercise of a right the TCPA protects: free speech, association, or petition. *ExxonMobil Pipeline Co.*, 512 S.W.3d at 898 (citing TEX. CIV. PRAC. & REM. CODE § 27.005).[4] Next, the burden shifts to the plaintiff to "establish by clear and specific evidence a prima facie case." *Id.* (citing § 27.005(c)). The Court will still dismiss if the defendant establishes the essential elements of a valid defense to plaintiff's claims. *Id.* (citing § 27.005(d)).[5]

Examining the plain statutory language that defines the "exercise of the right of free speech" as communications regarding "matters of public concern," and lists five broad categories of information that constitute "matters of public concern," the Texas Supreme Court has interpreted the scope of the TCPA to be limited to public subjects; although the "Act limits its scope to communications involving a public subject," the speech does not have to be made in a public forum. *See Lippincott*, 462 S.W.3d at 508 ("the plain language of the Act merely limits its scope to communications involving a public subject—not communications in public forums"). The patent meaning of the TCPA is to safeguard the rights of persons to speak on matters of public health and safety, as well as matters of public environmental, public economic, or public community concerns.

## B. Defendant Failed To State a Defense Under the TCPA Because Its Speech Was Not Based On Matters Of Public Concern

Despite the plain statutory language that protects speech regarding matters of public concern and the Texas Supreme Court's interpretation that the scope of the TCPA is limited to public subjects, Subsea 7 argues that its internal communications concerning Plaintiff's poor

---

[4] As the rights to petition and association are not at issue in this case, the Court does not address them.

[5] Additional procedural safeguards are codified in a variety of ways. The filing of the motion to dismiss stops discovery until the court has ruled. TEX. CIV. PRAC. & REM. CODE §§ 27.003(c), 27.006(b). The Act provides an accelerated time table for resolving the TCPA defense: requiring a hearing within 60 days of service, *id.* § 27.004, and a ruling within 30 days of the hearing, *id.* § 27.005(a). If the court fails to rule within 30 days, the motion is deemed denied by operation of law and the defendant may appeal. *Id.* § 27.008(a).

work performance were protected free speech under the TCPA because those communications "involv[ed] the issue of 'economics' and 'a good, product, or service in the marketplace.'" Def.'s TCPA Mot. to Dismiss 5, ECF No. 9.[6] In support of that argument, Subsea 7 states it is a subsea engineering, construction, and services company, serving the offshore energy industry. *Id.* Defendant further conceded that Mathiew was a Cost Controller in its Cost Control Department, a position that involved cost accounting and management of projects that are the "core of Subsea's business." *Id.* The supporting affidavit established the following:

> Successful project management is a critical factor in Subsea 7's efforts to increase its earnings for its shareholders. . . . Poor cost control performance by employees such as Ms. Mathiew has a direct and immediate impact on the Company's financial performance. Inadequate forecasting affects cash flow and can lead to inaccurate reporting of financial results.

Wiffin Aff., Exh. A ¶¶ 7, 11, ECF No. 9-1. "Because Mathiew's position directly impacted Subsea 7's economic performance and risk," Subsea 7 contends, "the communications regarding Mathiew's performance failures constitute Subsea 7's exercise of free speech concerning a matter of economic concern." *Id.* at 6. In its Reply, Subsea 7 reiterates this contention when it claims that "her work directly affected Subsea 7's financial health." Def.'s Reply 4, ECF 12.

Subsea 7 makes no attempt to tie its private economic interest to any matter of "public concern." Although Defendant discussed the holdings in *Memorial Hermann* and *Exxon*, where the courts found that those employer-employee disputes involved matters of public concern because the health and safety of the public is at stake when a doctor receives privileges at a hospital, and the public is impacted if toxic chemicals overflowed and spilled, creating a hazardous condition to the surrounding environment, Defendant's motion and affidavit contain no information showing how Subsea 7's "efforts to increase its earnings for [its] shareholders,"

---

[6] Other than this reference to the statutory language regarding a good, product, or service in the market, Defendant has not shown what good, product, or service is implicated in any market.

involved any public subject. To the contrary, Defendant's argument rests on purely private acts and concerns.

Defendant's failure to tie its economic concern to a matter of public concern or a public subject is consistent with the decisions in some state appellate courts that have applied the TCPA to any speech relating to "health," "safety," or "economics," often applying the Act to purely private disputes involving private property. *See, e.g., Cavin v. Abbott*, No. 3-16-00395-CV, 2017 WL 3044583, at *10 (Tex. App.—Austin July 14, 2017, no pet. h.) (not released for publication) ("As appellants urge, the subjects of mental illness or domestic abuse plainly fall within the ordinary meaning of "health" or "safety," and it is now clear that such "health" and "safety" under the TCPA includes that of private parties embroiled in an otherwise-private dispute far removed from any public participation in government."). *See generally Long Canyon Phase II & III Homeowner's Ass'n, Inc. v. Cashion*, 517 S.W.3d 212, 216-17 (Tex. App.—Austin 2017, no pet.) ("Texas courts' brief history in applying the broadly worded TCPA has not limited application of the Act's protections to weighty issues of public concern. The dismissal mechanism of the statute has been applied in cases for fraud and barratry, a suit for contamination of a water well, a dispute between neighbors over a fence, defamation claims arising from an employment dispute, a snarl of competing claims arising from discussions among horse breeders on social media, and a host of other types of claims."). In doing so, some state appellate courts have applied the TCPA not just to claims filed to punish or chill the exercise of free speech rights involving matters of public concern—the stated purpose of the Act—but to nearly any claim that might be brought, for nearly any reason. *See Serafine v. Blunt*, 466 S.W.3d 352, 365 (Tex. App.—Austin 2015, no pet.) (Pemberton, J., concurring) (describing the TCPA as "less an 'anti-SLAPP' law than an across-the-board game-changer in Texas civil litigation").

Yet, other courts have observed that purely private employer-employee disputes are not matters of private concern. *See, e.g., Memorial Hermann Health System v. Khalil*, No. 01-16-00512-CV, 2017 WL 3389645 (Tex. App.—Houston [1st Dist.] August 8, 2017) ("Whether a privately-employed person satisfactorily performs her job—while an important issue to the employer—is generally not a matter that would be considered a public concern for First Amendment purposes."); *Rivers v. Johnson Custodial Home, Inc*., No. A-14-CA-484-SS, 2014 WL 4199540, at *2 (W.D. Tex. August 22, 2014) (holding that a former employer's statements to prospective employers that employee was a cross-dresser did not relate to a matter of public concern). Thus, to establish the TPCA free speech defense, a defendant must show that the speech implicated a matter of public concern. *E.g., Khalil v. Memorial Hermann Health Sys.*, No. H-17-1954, 2017 WL 5068157, at *5 (S.D. Tex. Oct. 30, 2017) (federal court applied TCPA to state law age discrimination claim on ground that hospital's communications regarding doctor's competence was made in connection with an issue related to health or safety and thus was a matter of public concern) (citing *Khalil*, 2017 WL 3389645, at *6 (Texas appellate court considered same facts under different causes of action and found the hospital's statements concerning a healthcare professional's competence related to "health or safety," and thus to matters of public concern under the TCPA)).

Because Defendant has failed to show that its activities in firing Plaintiff involve a "matter of public concern," it has failed to establish a defense under the TCPA.[7] However, even

---

[7] Plaintiff alleges that, in the event the TCPA applies, she sufficiently alleged a clear and specific *prima facie* claim for discrimination and retaliation. Pl.'s Resp. 3, ECF No. 8-9. The Court agrees. The Complaint contains dates and specific facts establishing that Plaintiff is (1) a member of a protected group—African American; (2) she was qualified for the job, having received an appropriate employee review from her supervisor in March 2014; (3) she was terminated; and (4) she has alleged that other similarly situated non-black employees (identified by name and date) were provided with opportunities she was not. *See* Pl. Compl. 5, ECF No. 1 (citing *Black v. Pan Am. Labs., LLC*, 646 F.3d 254, 259(5th Cir. 2011) (quoting *Valdez v. San Antonio Chamber of Commerce*, 974 F.2d 592, 596 (5th Cir. 1992)). In addition, Plaintiff has alleged (1) she engaged in protective activity—made a report to human resources about discriminatory treatment; (2) the employer too an adverse employment action against her—she was

9

if Defendant's interpretation of the TCPA is correct, its TCPA defense cannot be applied to a federal claim.

### C.  Application of the TCPA in the Fifth Circuit: Substantive vs. Procedural

With the TCPA, Texas makes the substantive free speech rights of its citizens of such paramount importance when they relate to matters of public concern that it will protect those rights against lawsuits filed with the purpose of infringing them. Texas accomplishes this through the strict procedural mechanisms of the Act. *Serafine*, 466 S.W.3d at 369 (Pemberton, J., concurring) ("The specific means by which the Legislature sought to accomplish the TCPA's stated purpose was to provide a new set of procedural mechanisms through which a litigant may require, by motion, a threshold testing of the merits of legal proceedings . . . .").

#### 1.  *The Fifth Circuit has not decided whether the TCPA is substantive or procedural and the district courts are split*

This mix of substantive rights, enforced through procedural rules, has caused courts in this circuit to struggle with how to define and apply the TCPA. Because this issue has not been properly preserved in the cases before the Fifth Circuit, it has not yet *ruled* on whether the TCPA is substantive or procedural, or whether it should even be applied in federal court. Instead, the Fifth Circuit "*assumed-without deciding*-[it] controls as state substantive law" and *applied* the TCPA to state law claims in cases based on diversity jurisdiction.  *Pylant*, 814 F.3d at 706 & n.6 (assuming that the TCPA motion to dismiss was functionally substantive and the other state procedural mechanisms regarding accelerated time tables and stays for discovery, etc. applied as substantive law); *NCDR, L.L.C.*, 745 F.3d at 752 (plaintiff waived the argument that the TCPA was procedural law that conflicted with federal rules of civil and appellate procedure, so the Fifth

---

terminated; (3) the causal link—because of her complaint to human resources. *Id.* at 5 (citing *Gee v. Principi*, 289 F.3d 342, 345 (5th Cir. 2002)). Plaintiff sufficiently pled a claim for relief under either the Rule 8 standard for notice pleading, or the higher TCPA standard for clear and specific evidence.

Circuit assumed that it did not). The Fifth Circuit has also held that a federal court defendant may bring a motion to dismiss under Louisiana's similar anti-SLAPP statute. *Henry v. Lake Charles Am. Press, L.L.C.,* 566 F.3d 164, 169 (5th Cir. 2009). At least three district courts in the Southern District of Texas have relied on this precedent to find that the Act is substantive and applies in federal diversity cases. *Khalil,* 2017 WL 5068157, at *5 (finding the Fifth Circuit's assumption that the TCPA applies in *Pylant* and its application of the Louisiana anti-SLAPP statute as persuasive, applying it to Texas age discrimination claim on ground that hospital's communications regarding doctor's competence was made in connection with an issue related to health or safety and thus was a matter of public concern); *Banik v. Tamez*, No. 7:16-CV-462, 2017 WL 1228498, at *2 (S.D. Tex. April 4, 2017) ("state anti-SLAPP statutes have been entertained [in the Fifth Circuit] on the ground that they constitute substantive law"); *see also Williams v. Cordillera Commcn's, Inc.,* No. 2:13-CV-124, 2014 WL 2611746, at *2 (S.D. Tex. June 11, 2014) (enforcing TCPA, finding anti-SLAPP statutes enforceable in federal courts sitting in diversity).

In contrast, one federal district court has concluded the Act is entirely procedural and is not applicable in federal court. *Rudkin v. Roger Beasley Imports, Inc.*, No. A-17-CV-849-LY, 2017 WL 6622561, at *3 (W.D. Tex. Dec. 28, 2017) ("It is a procedural statute and thus not applicable in federal court."). At least one member of the Fifth Circuit agrees with this analysis. *Pylant*, 814 F.3d at 719 (Graves, J., dissenting) ("Applying an *Erie* analysis, I conclude that the TCPA is procedural and must be ignored.").

Other district courts have concluded the Act is both substantive and procedural. *Allen v. Heath*, No. 6:16-CV-51 MHS-JDL, 2016 WL 7971294, at *4 (E.D. Tex. May 6, 2016) ("while the TCPA provides a procedural mechanism for early dismissal, it ultimately provides a basis for

dismissal that is inextricably tied to the substantive nature of Plaintiff's claims"); *Williams*, 2014 WL 2611746, at *1 ("The TCPA is procedural in that it has specific time constraints, places a stay on discovery, and requires an expedited decision . . . . However, these procedural features are designed to prevent substantive consequences – the impairment of First Amendment rights.").

The Plaintiff in this case has raised the issue, asserting the TCPA is not applicable because its procedural aspects amount to state procedural law that is not applicable in federal court. Pl.'s Resp. 4, ECF No. 11. Plaintiff also asserts that the substantive aspects of the TCPA conflict with federal law. *Id.* This Court agrees. Under the TCPA, Texas has created a substantive defense to lawsuits that arise out of free speech related to matters of public concern.[8] Texas specifically carves out of general free speech rights a right to speak on matters of public concern, as defined, and grants that speech special protection. If a lawsuit infringes on this type of speech, then the speaker has a defense. This defense does not apply to other types of speech. The protection takes the form of procedural safeguards, providing for a motion to dismiss that is fast tracked for a speedy decision, with shifting burdens of proof, evidentiary standards, interlocutory appeal, and cost shifting.

Next, the Court will examine whether these procedural protections, which the Fifth Circuit assumed were substantive, conflict with federal procedure. Then, the Court will examine whether the substantive rights conflict with Title VII.

### 2. *TCPA's procedural mechanisms conflict with the Federal Rules of Civil Procedure*

The TCPA has a host of procedural mechanisms in place to achieve its purpose quickly.

---

[8] The TCPA is not limited to protecting constitutional free speech rights, but extends beyond and without regard to the parameters of the First Amendment or the Texas Constitution. *Cavin v. Abbott*, No. 03-16-00395-CV, 2017 WL 3044583, at *11 (Tex. App. July 14, 2017, no pet.); *accord Elite Auto Body LLC v. Autocraft Bodywerks, Inc.*, 520 S.W.3d 191, 204 (Tex. App. 2017, reh'g denied, and review dismissed).

Careful review of the Act shows that those procedural mechanisms conflict with the Federal Rules of Civil Procedure. For example, the Act's burden-shifting mechanism is different from the standards under Rule 12(b)(6) and Rule 56 of the Federal Rules of Civil Procedure. *Pylant*, 814 F.3d at 719-21 (Graves, J., dissenting); *Khalil*, 2017 WL 5068157, at *4.  To survive a TCPA motion to dismiss, a plaintiff must provide "clear and specific evidence" for each element of a prima facie case. TEX. CIV. PRAC. & REM. CODE § 27.005(c). This may be done through examination of the pleadings, supporting and opposing affidavits, and if granted by motion, limited discovery. TEX. CIV. PRAC. & REM. CODE § 27.006. Although there is no precise definition of clear and specific evidence, the Texas Supreme Court explained this means evidence that is "unambiguous, sure, or free from doubt," "explicit or relating to a particular named thing," and that "support[s] a rational inference that the allegation of fact is true, and lies somewhere between Texas's notice pleading standard and the evidentiary standard necessary to prevail at trial. *See In re Lipsky*, 460 S.W.3d at 590-91. As a result, the TCPA requires a Plaintiff to provide "clear and specific evidence" of the elements of its claims in response to a motion to dismiss. It then allows a defendant to establish by "a preponderance of the evidence" a defense to those claims. *Pylant*, 814 F.3d at 719 (Graves, J., dissenting). In doing so, the TCPA has codified both the procedure to seek early dismissal of a claim and the burdens of proof required at each step of that process.

The Federal Rules of Civil Procedure have already established the manner in which a party can obtain dismissal of a claim before trial in federal court. It begins with the requirement in Rule 8(a)(2) for "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (citing *Conley v.*

*Gibson,* 355 U.S. 41, 47 (1957)). If the Plaintiff fails to meet this requirement, Federal Rule 12(b)(6) allows a defendant to seek dismissal based on the pleadings alone. A plaintiff needs only to allege facts sufficient to state a claim that is plausible on its face to overcome a Rule 12(b)(6) motion to dismiss. *See Twombly*, 550 U.S. at 570. In this context, with only limited exceptions, "in determining whether a complaint states a claim upon which relief may be granted, a court must not look beyond the pleadings." *Carpenters Local Union No. 1846 v. Pratt–Farnsworth, Inc*., 690 F.2d 489, 499–500 (5th Cir. 1982), *cert. denied*, 464 U.S. 932 (1983). In contrast, the TCPA allows the court to look beyond the pleadings and consider any "supporting and opposing affidavits stating the facts on which the liability or defense is based." Additionally, the TCPA requires "clear and specific evidence" for a prima facie case when the Federal Rules require only a "short and plain statement" that is "sufficient to state a claim that is plausible on its face." *Twombly*, 550 U.S. at 570.

The TCPA's mechanism for a defendant to obtain dismissal, if it establishes a defense by a preponderance of the evidence, is contrary to both Rule 12(b)(6) and Rule 56. Because Rule 12(b)(6) looks only to whether the plaintiff has alleged sufficient facts to state a claim that is plausible on its face, it has no mechanism to evaluate the merits of a party's defense. That falls to Rule 56 which permits summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Under this standard, the inquiry becomes "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 251–52 (1986). In a Rule 56 motion, a defendant is not entitled to dismissal of the Plaintiff's claims unless the evidence supporting its defense is "so one-sided" that there can be no other conclusion. Under the TCPA's

14

preponderance of the evidence standard, a defendant need only show that "the existence of a fact is more probable than its nonexistence. . . .'" *Concrete Pipe & Prod. of California, Inc. v. Constr. Laborers Pension Tr. for S. California*, 508 U.S. 602, 622 (1993) (quoting *In re Winship*, 397 U.S. 358, 371–72 (1970) (Harlan, J., concurring)); *Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1254, n.13 (5th Cir. 1998) (describing the "preponderance of the evidence" standard to mean "more likely than not"). Under these competing standards, the TCPA allows a defendant to obtain dismissal on evidence that his defense is "more likely than not" true, while under the federal rules, he cannot prevail on summary judgment unless the evidence supports his defense, almost to a certainty.

As is apparent, the provisions of the TCPA overlap with Rules 8, 12, and 56. As Judge Graves found in his dissent in *Pylant*, the TCPA directly conflicts with the "integrated program" Rules 12 and 56 create for determining whether to grant pre-trial judgment in cases in federal court because it changes the burdens of proof applicable to both parties. 814 F.3d at 720; *Rudkin*, 2017 WL 6622561, at *3 (relying on Judge Graves dissent, refusing to apply the TCPA to sex discrimination claims under Title VII); *accord Abbas v. Foreign Policy Grp., LLC¸* 783 F.3d 1328, 1333-34 (D.C. Cir. 2015) (refusing to apply anti-SLAPP dismissal provisions because it conflicts with Rules 12 and 56 by "setting up an additional hurdle a plaintiff must jump over to get to trial"); *Makaeff v. Trump University*, LLC, 736 F.3d 1180, 1188 (9th Cir. 2013) (Watford, J., dissenting from denial of rehearing en banc) (Rules 12 and 56 "establish the exclusive criteria for testing the legal and factual sufficiency of a claim in federal court"); *Makaeff v. Trump University, LLC*, 715 F.3d 254, 274 (9th Cir. 2013) (Kozinski, J., concurring) (same). Accordingly, the procedural mechanisms of the TCPA must yield to the Federal Rules of Civil Procedure.

### D. The Supremacy Clause Bars Application of the TCPA to Plaintiff's Title VII Claims

Even if Defendant's interpretation of the scope of the TCPA is correct, the Act does not apply to Plaintiff's federal discrimination and retaliation claims under Title VII. *See* Pl.'s Resp. 3, ECF No. 11. Although the Fifth Circuit has yet to decide whether the TCPA applies to federal claims in federal court,[9] one court in the Southern District of Texas relied on the Supremacy Clause and refused to apply to TCPA to advertising claims brought under the Lanham Act. *NCDR LLC*, 2012 WL 12871954, at *2. Likewise, the Ninth Circuit and at least two other federal courts have concluded that similar anti-SLAPP statutes do not apply. *See, e.g., Hilton v. Hallmark*, 599 F.3d 894, 901 (9th Cir. 2010) ("the anti-SLAPP statute does not apply to federal law causes of action"); *In re Bah*, 321 B.R. 41, 46 (B.A.P. 9th Cir. 2005) ("anti-SLAPP statute may not be applied to matters involving federal questions"); *Doctor's Data, Inc. v. Barrett, M.D.*, No. 10 C 03795, 2011 WL 5903508, at *2 (N.D. Ill. Nov. 22, 2011) ("[the Illinois anti-SLAPP statute] is a substantive law; thus, applying it to federal claims would permit state law to affect and alter the substance of federal claims in violation of the Supremacy Clause of the Constitution"); *Jenkins v. Miller*, No. 2:12-CV-184, 2017 WL 4402431, at *30 (D. Vt. Sept. 29, 2017) ("[automatic stay provision of state anti-SLAPP statute] cannot apply to a federal cause of action, since doing so would frustrate substantive federal rights and violate the Supremacy Clause").

---

[9] *Compare Walker v. Beamont Ind. Sch. Dist.*, No. 1:15-CV-379, 2016 WL 6666828, at *4 (E.D. Tex. 2016) ("Whether the TCPA applies to federal claims asserted in federal court is a novel issue in this Court . . . . [that] the court need not address . . ."), *with NCDR LLC v. Mauze & Bagby, PLLC*, No. L-12-36, 2012 WL 12871954, at *2 (S.D. Tex. October 5, 2012), *aff'd on other grounds*, 745 F.3d 742 (5th Cir. 2014) (holding that the TCPA does not apply to plaintiff's federal Lanham Act claims because it would create an obstacle to the federal rights in violation of the Supremacy Clause), *and Khalil*, 2017 WL 5068157, at *4-5 (Judge Rosenthal applied the TCPA to state law discrimination claims, but because defendant had not asserted the TCPA to the plaintiff's federal discrimination claims, did not decide that question.).

### 1. *The Supremacy Clause: federal law is supreme law of the land*

It is a familiar and well-established principle that article VI, clause 2, of the United States Constitution ("the Supremacy Clause") invalidates state laws that "interfere with, or are contrary to," federal law. *Hillsborough Cty., Fla. v. Automated Med. Labs., Inc*., 471 U.S. 707, 712–13 (1985) (citing *Gibbons v. Ogden*, 9 Wheat. 1, 211, 6 L.Ed. 23 (1824) (Marshall, C.J.)). The Supremacy Clause states:

> "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

"[T]his Clause creates a rule of decision: Courts 'shall' regard the 'Constitution,' and all laws 'made in Pursuance thereof,' as 'the supreme Law of the Land.' They must not give effect to state laws that conflict with federal laws." *Armstrong v. Exceptional Child Ctr., Inc*., 135 S. Ct. 1378, 1383, 191 L. Ed. 2d 471 (2015) (citing *Gibbons*, 9 Wheat. 1, 210, 6 L.Ed. 23).

Federal law may supersede state law in several distinct ways. Congress is empowered, within limits, to pre-empt state law by so stating in express terms. *Jones v. Rath Packing Co*., 430 U.S. 519, 525 (1977). In the absence of express language, Congress' intent to pre-empt all state law in a particular area may be inferred where the scheme of federal regulation is sufficiently comprehensive to make reasonable the inference that Congress "left no room" for supplementary state regulation. *Rice v. Santa Fe Elevator Corp*., 331 U.S. 218, 230 (1947). Pre-emption will also be inferred where the field is one in which "the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." *Id*.; *see also Hines v. Davidowitz*, 312 U.S. 52, 69 (1941) (discussing federal interest in controlling immigration to pre-empt Pennsylvania Alien Registration Act). Even where Congress has not completely displaced state regulation in a specific area, a state law will be nullified to the

17

extent that it actually conflicts with federal law. Such a conflict arises when "compliance with both federal and state regulations is a physical impossibility," *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142-143 (1963), or when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines*, 312 U.S. at 67; *see also Capital Cities Cable, Inc. v. Crisp*, 467 U.S. 691, 698-99 (1984).

### 2.   *Title VII allows for other laws relating to employment discrimination*

Title VII of the Civil Rights Act of 1964 was enacted "to assure equality of employment opportunities by eliminating those practices and devices that discriminate on the basis of race, color, religion, sex, or national origin." *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 44 (1974). It creates statutory rights against "invidious discrimination" in employment and establishes a comprehensive scheme for the vindication of those rights. *Id.* That scheme includes the creation of the Equal Employment Opportunity Commission with an opportunity to settle disputes through conference, conciliation, and persuasion before the aggrieved party is permitted to file a lawsuit. *Id.* Ultimately, though, "final responsibility for enforcement of Title VII is vested with federal courts." *Id.*

"The legislative history of Title VII manifests a congressional intent to allow an individual to pursue independently his rights under both Title VII and other applicable state and federal statutes. The inference is that Title VII was designed to supplement rather than supplant, existing laws and institutions relating to employment discrimination." *Id.* at 48. As a result, "Title VII will not be 'deemed' (that is, construed) to prevent states from imposing liability in any way they see fit, so long as the states do not interfere with Title VII by requiring or permitting acts that Title VII would forbid." *Bradshaw v. Sch. Bd. of Broward Cty., Fla.*, 486 F.3d 1205, 1210–11 (11th Cir. 2007). In fact, Congress expressly disclaimed any such preclusive effect:

"Nothing contained in any title of this Act shall be construed as indicating an intent on the part of Congress to occupy the field in which any such title operates to the exclusion of State laws on the same subject matter, nor shall any provision of this Act be construed as invalidating any provision of State law unless such provision is inconsistent with any of the purposes of this Act, or any provision thereof."

42 U.S.C. § 2000h-4.

Since Title VII does not expressly pre-empt state law, the focus must be on whether the TCPA "stands as an obstacle to the accomplishment and execution of the full purposes and objectives" of Title VII. *Hines*, 312 U.S. at 67. "Title VII tolerates no racial discrimination, subtle or otherwise." *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 801 (1973). Title VII will allow for any parallel Texas laws to co-exist so long as those laws do not "stand as an obstacle," or frustrate its purpose.

### 3. The TCPA's free speech defense is not enforceable against a Title VII claim

Relying on the TCPA, Defendant asks the court to carve out a defense to a racial discrimination claim under Title VII because the allegedly discriminatory conduct involved free speech in its economic interest. Thus, Defendant asserts a state law created substantive right under the TCPA that would afford a defense to a Title VII discrimination and retaliation claim.

A state law that allows discriminatory conduct in violation of Title VII is not enforceable. *Guardians Ass'n of N.Y.C. Police Dept, Inc. v. Civil Serv. Comm'n of City of N.Y,* 630 F.2d 79, 105 (2d Cir. 2005) ("Title VII explicitly relieves employers from any duty to observe a state hiring provision 'which purports to require or permit' any discriminatory employment practice."); *Bradshaw v. Sch. Bd. Of Broward Cty., Fla.*, 486 F.3d 1205, 1210-11 (11th Cir. 2007) ("Title VII will not be 'deemed' to prevent states from imposing liability in any way they see fit, so long as the states do not interfere with Title VII by requiring or permitting acts that Title VII would prohibit."). The TCPA conflicts with, and infringes on, Title VII's goal of

eliminating employment discrimination on the basis of race. *See Southern Pacific Co. v. Arizona, ex rel. Sullivan*, 325 U.S. 761, 766 (1915). Title VII prohibits discriminatory employment practices, but the TCPA provides a mechanism to dismiss claims based on that same conduct when the discrimination arises from speech on matters of public concern. It is recognized in this circuit that:

> "State laws cannot create obstacles to the accomplishment and execution of the full purposes and objectives of federal statutes and regulations. In the context of a federal cause of action, a state's anti-SLAPP statute may create such an obstacle or interference that precludes a federal court from applying the state statute. . . . If the Court permitted the application of the TCPA to these claims, such would create an obstacle to the federal rights provided by [the federal statute] and interfere with the execution of the Federal Rules of Civil Procedure."

*NCDR LLC*, 2012 WL 12871954, at *2 (declining to apply the TCPA to Lanham Act claims).

In this case, the TCPA would frustrate the purpose of Title VII because it would allow prohibited discriminatory conduct. When two laws conflict, the Supremacy Clause dictates that the federal law prevails. *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000). Accordingly, the Texas statutory defense cannot be applied to the federal claims asserted in this case, even despite Texas's interest in protecting the free speech rights of its citizens on matters of public concern; under the Supremacy Clause of the Constitution, the "relative importance to the State of its own law is not material . . . , for any state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield." *Felder v. Casey*, 487 U.S. 131, 138 (1988). For these reasons, Defendant's motion to dismiss should be denied.

## CONCLUSION

The Court **RECOMMENDS**:

1) Subsea 7 (US) LLC's TCPA Motion to Dismiss Plaintiff's Original Complaint should be **DENIED;**

2)  Subsea 7 (US) LLC's request for court costs, reasonable attorney's fees, expenses and sanctions in accordance with the TCPA should be **DENIED**;

3)  Plaintiff's cross-request for court costs, reasonable attorney's fees, expenses and sanctions in accordance with the TCPA should be **DENIED**.[10]

**The Parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). Failure to file timely objections will preclude review of factual findings or legal conclusions, except for plain error.** *Quinn v. Guerrero*, **863 F.3d 353, 358 (5th Cir. 2017).**

Signed on March 9, 2018, at Houston, Texas.

*Dena Palermo*
_____
**Dena Hanovice Palermo**
**United States Magistrate Judge**

---

[10] Because the TCPA does not apply to the federal claims asserted here, Plaintiff, as the prevailing party, cannot rely on the Act to recover its court costs and reasonable fees. *See* Tex. Civ. P. & Rem. Code § 27.009(b).