UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LATASHA MATHIEW, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:17-CV-3140 |
| | § | |
| SUBSEA 7 (US) LLC, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

This is an employment discrimination case against a subsea engineering and construction company. Plaintiff brought two Title VII claims: race discrimination and retaliation. (Doc. No. 1 ¶¶ 35, 48.) Defendant now moves for summary judgment, arguing that (1) Plaintiff has not identified any valid comparators, and (2) Plaintiff was fired for her documented poor performance. (Doc. No. 19.)

I. **BACKGROUND**

Plaintiff, who is African-American, was hired by Defendant as a Cost Controller on June 3, 2013. (Doc. No. 1 ¶ 11.) The cost control department "is responsible for cost forecasting." (Doc. No. 19 at 9.) Plaintiff's superiors were Yves Poisson and Keith Wiffin, who are both Caucasian. (Doc. No. 1 ¶¶ 13-14.) There was one other African-American employee in the cost control department with Plaintiff, Joanna Harris. (Doc. No. 1 ¶ 22.) In March of 2014, Plaintiff received an employee review stating that she was "on target." (Doc. No. 1 ¶ 18; Doc. No. 20-3 at 63-64.) Plaintiff interprets this as a sign she was progressing as expected, while Defendant alleges this indicates that "her performance was not good, but not completely failing." (Doc. No. 19 at 12.)

1

Plaintiff requested training on a new cost model several times between November 2013 and April 2014. (Doc. No. 1 ¶¶ 16-19.) On April 21, 2014, Plaintiff sent a letter to Defendant's Human Resources department alleging "incidents of unfair treatment occurring due to race in which . . . Black [employees] . . . are being denied new projects, important assignments, and or opportunities to get real hands on experience and full formal training that is necessary to develop within their career." (Doc. No. 1 ¶¶ 20-21.) The next day, Plaintiff met with Defendant's Human Resources Director, Mark Waddell, to discuss her complaints. (Doc. No. 1 ¶ 23.)

On April 23, 2014, at the suggestion of Human Resources, Plaintiff met with her manager, Mr. Wiffin, and the Country Project Services Manager, Thomas Totten, to discuss her complaints of racial discrimination in her department. (Doc. No. 1 ¶ 24.) In response to this meeting, several training sessions were set up for Plaintiff. (Doc. No. 1 ¶ 25.)

In July of 2014, Plaintiff received a company-wide raise, which was issued to all employees to reflect inflation. (Doc. No. 1 ¶ 26.) Mr. Wiffin told Plaintiff he opposed the raise because she was not yet performing at the level he expected. (Doc. No. 19-1 at 76-78.) Defendant states that an administrative error caused the raise to be applied to Plaintiff. (Doc. No. 19-1 at 76-78.)

On August 11, 2014, Plaintiff was terminated. (Doc. No. 1 ¶ 30.) Mr. Wiffin and Mr. Totten made the decision to fire Plaintiff. (Doc. No. 19 at 16.) Plaintiff claims that she was terminated in retaliation for her complaints about racial discrimination.

Plaintiff alleges that several non-black employees were given project opportunities that were not provided to black employees in the department. (Doc. No. 1 ¶ 31.) Plaintiff also points

to a non-black comparator in her department who was not fired for various errors made on the job. (Doc. No. 1 ¶ 32.)

Defendant's motion for summary judgment contends that Plaintiff was fired because of her poor performance. (Doc. No. 19 at 6.) According to Defendant, Plaintiff was afforded ample training and time in which to learn her job duties but was never able to work independently. (Doc. No. 19 at 6-7.) Defendant counters Plaintiff's claim that black employees were not provided projects and training by introducing evidence that Plaintiff was assigned to "one of the largest projects" at the company and received numerous training opportunities. (Doc. No. 19 at 6-7, 10-11.) Defendant claims that Plaintiff's April 2014 letter to Human Resources was fabricated to cover her own failures, and not indicative of racial discrimination within her department. (Doc. No. 19 at 7.) Defendant also argues that, because the comparator identified by Plaintiff was a participant in the commercial graduate program, he was not similarly situated to Plaintiff. (Doc. No. 19 at 10.)

## II. LEGAL STANDARD

On a motion for summary judgment, the movant can succeed only if there is "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "A fact is material only when it might affect the outcome of the suit under the governing law, and a fact is genuinely in dispute only if a reasonable jury could return a verdict for the non-moving party." *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006).

"If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific

facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake,* 47 F.3d 1459, 1462 (5th Cir. 1995). In deciding a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*

## III. <u>DISPARATE TREATMENT CLAIM</u>

### A. <u>APPLICABLE LAW</u>

Title VII makes it "an unlawful employment practice for an employer" to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1) (2018). Courts evaluate Title VII claims under the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 1817 (1973). Under *McDonnell Douglas*, to establish "intentional discrimination under Title VII . . . , a plaintiff must first prove a *prima facie* case of discrimination." *Wallace v. Tex. Tech. Univ.,* 80 F.3d 1042, 1047 (5th Cir. 1996). A plaintiff can prove a *prima facie* case of discrimination through either (1) direct evidence of discriminatory motive, or (2) a four-part test that "raises a presumption of discrimination." *Meinecke v. H & R Block of Hous.*, 66 F.3d 77, 83 (5th Cir. 1995).

The four-part test allows a plaintiff to establish a *prima facie* case of discrimination by proving she: "(1) is a member of a protected class, (2) was qualified for the position that [s]he held, (3) was subject to an adverse employment action, and (4) was treated less favorably than others similarly situated outside of h[er] protected class." *Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 426 (5th Cir. 2017). "Generally, to establish a prima facie case, a plaintiff need only make a very minimal showing." *Thornbrough v. Columbus & Greenville R.R. Co.*, 760 F.2d 633,

639 (5th Cir. 1985), *abrogated on other grounds by St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993).

The fourth prong of the test "requires a Title VII claimant to identify at least one coworker outside of his protected class who was treated more favorably 'under nearly identical circumstances.'" *Alkhawaldeh*, 851 F.3d at 426 (quoting *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009)). However, the Fifth Circuit has emphasized that "nearly identical" is not "synonymous with 'identical.'" *Lee*, 574 F.3d at 260. To be considered a valid comparator, the coworker must have "held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and ha[d] essentially comparable violation histories." *Id*.

Under the *McDonnell Douglas* burden-shifting framework, once a plaintiff has established a *prima facie* case of discrimination, the burden shifts to the defendant to "articulat[e] a legitimate, nondiscriminatory reason for its actions." *Meinecke v. H & R Block of Hous.*, 66 F.3d 77, 83 (5th Cir. 1995). If the defendant provides a nondiscriminatory reason for the adverse employment action, the burden reverts back to the plaintiff to "prove that the proffered reasons are a pretext for discrimination." *Id.*

B. <u>ANALYSIS</u>

Defendant's main arguments are that (1) Plaintiff has not established a *prima facie* case of discrimination, because she has not identified any similarly situated individuals who were treated more favorably than she was, and (2) even if Plaintiff established a *prima facie* case of discrimination, she was terminated not because of her race, but because of her poor performance.

Plaintiff argues that this reason is pretextual and points out that her alleged poor performance was only documented after Defendant learned of her complaints of racial discrimination.

### *1. WHETHER PLAINTIFF IDENTIFIES A VALID COMPARATOR*

Defendant does not dispute that Plaintiff has met the first three elements of the test for establishing a *prima facie* case of discrimination. The Court now turns to the final element, whether Plaintiff has shown that other employees outside the protected class were treated more favorably than Plaintiff was. Plaintiff argues that the comparator for her disparate treatment claim is Daniel Aghili, a non-black employee whom she alleges repeatedly violated Defendant's employee code of conduct and made grave errors in his cost forecasting, but was not terminated. Defendant contends that Mr. Aghili cannot be a valid comparator, because he was not a permanent Cost Controller, but a participant in the commercial graduate program, which included short rotations through various departments, including the cost control department.

It is undisputed that Mr. Aghili was outside Plaintiff's protected class and was treated more favorably than Plaintiff, in that she was terminated and he was not. A more difficult question is whether the disparate treatment occurred under "nearly identical circumstances." *Lee*, 574 F.3d at 259. Although Mr. Aghili's supervisor was not Mr. Wiffin, Mr. Totten held decision-making authority over both employees' "ultimate employment status." (Doc. No. 20-3 at 33, 36.) Thus, Plaintiff and Mr. Aghili "had their employment status determined by the same person." *Lee*, 574 F.3d at 260.

Both parties make convincing arguments about whether Mr. Aghili "held the same job or responsibilities" as Plaintiff. *See Lee*, 574 F.3d at 260. Plaintiff was a Junior Cost Controller, while Mr. Aghili was a commercial graduate temporarily stationed in the cost control

department. (Doc. No. 20-3 at 29, 35.) Therefore Mr. Aghili did not hold the "same job" as Plaintiff. However, the purpose of the commercial graduate program was to familiarize participants with each department, and as such they held the same day-to-day responsibilities as permanent employees during their rotations in each department. (Doc. No. 20-3 at 35.) Despite the similarity in daily tasks of a commercial graduate on rotation and the permanent employees in that department, the fact that the commercial graduate program included placements in several departments may account for the difference in treatment, since Mr. Aghili would shortly transfer to another department. (Doc. No. 20-3 at 35.) Thus, errors made in cost forecasting may not have been viewed as harshly as those made by an employee who was a full-time Cost Controller.

The parties present conflicting evidence of whether Mr. Aghili and Plaintiff had "essentially comparable violation histories." *Lee*, 574 F.3d at 260. Plaintiff introduced her letter to Human Resources, which included a timeline of Mr. Aghili's alleged "infractions." (Doc. No. 20-3 at 68-69.) Defendant has acknowledged at least the first of these incidents, in which Mr. Aghili made a suggestive joke. (Doc. No. 20-3 at 20-21, 68.) Plaintiff has not been accused of any similar infractions. Plaintiff also provides an email chain documenting several cost-forecasting errors made by Mr. Aghili on the project she took over. (Doc. No. 20-3 at 102-04.) The severity of these errors is in dispute. (Doc. No. 19-1 at 201-02.)

Despite the conflicting evidence regarding whether Mr. Aghili is similarly situated to Plaintiff, the Court determines that Plaintiff has submitted sufficient evidence to overcome the "very minimal showing" required to establish a *prima facie* case of discrimination. *Thornbrough*, 760 F.2d at 639.

## 2. WHETHER DEFENDANT'S PROFFERED REASON WAS PRETEXTUAL

To rebut Plaintiff's *prima facie* case of discrimination, Defendant argues that Plaintiff was terminated based on her poor performance. Specifically, Defendant alleges that Plaintiff (1) scored a "zero" on a quiz related to her cost-control responsibilities after working in the department for a year (Doc. No. 19-1 at 135, 209-10); (2) failed to comprehend cost-control principles despite extensive one-on-one training (Doc. No. 19-1 at 135, 141-44, 168-69, 184-85, 204); and (3) made significant errors on the LLOG Who Dat project, such that "the budget for project management and engineering had basically run out, and the project was still halfway through" (Doc. No. 19-1 at 183-84). This evidence of poor performance satisfies Defendant's burden to proffer a legitimate, nondiscriminatory reason for Plaintiff's termination.

Plaintiff argues that Defendant's proffered reason is pretextual. Plaintiff notes that the documentation of Plaintiff's performance issues only began after Defendant learned of her complaints of racial discrimination, and that the only performance review conducted prior to her complaints characterized her as "on target" and displaying a "good performance in 2013 on a challenging project." (Doc. No. 20-3 at 63-64).

The Fifth Circuit has previously found sufficient evidence of pretext when a plaintiff alleged that the defendant papered the plaintiff's file with documentation of performance or disciplinary issues in order to justify the adverse employment action taken. In *Haire v. Board of Superiors of Louisiana State University Agricultural & Mechanical College*, the court found sufficient evidence of pretext where the plaintiff had a valid reason for taking an action that became the subject of a disciplinary write-up, and the timing of the write-up was suspiciously near in time to the promotion of a less-qualified employee. 719 F.3d 356, 365 (5th Cir. 2013)

("By papering Haire's files with disciplinary write-ups, it could protect itself with a sham justification for not promoting a female applicant who was more qualified."). In *Burton v. Freescale Semiconductor, Inc.*, the Fifth Circuit held that "[e]vidence of a sudden and unprecedented campaign to document Burton's deficiencies and thus justify a decision that had already been made . . . could raise an inference of pretext." 798 F.3d 222, 236 (5th Cir. 2015). The *Burton* court found direct evidence that the defendant "acted to create an exculpatory paper trial," where it requested "documentation" from the plaintiff's supervisors before firing her.

Plaintiff in this case argues that the emails introduced as evidence of her professional shortcomings were intentionally produced to lay the groundwork for her termination. Plaintiff's alleged performance issues were more serious than the incident relied on to justify the adverse employment action in *Haire*, and Plaintiff lacks the strong direct evidence of artificial documentation the court found persuasive in *Burton*.[1] However, Plaintiff does introduce an email that was sent after Plaintiff's firing that could be viewed by a jury as an attempt to fabricate evidence of Plaintiff's poor performance. In this email, Mr. Totten documents some of Plaintiff's alleged performance problems and, in one instance, uses the present tense instead of the past tense, despite the fact that Plaintiff had been fired the month prior. (Doc. No. 19-1 at 135 ("Recent findings on Who Dat have reinforced that she just isn't picking up basic Cost Control concepts.").) The email was sent to Plaintiff's former manager, Mr. Wiffin, as well as the head of Human Resources. (Doc. No. 19-1 at 135.)

---

[1] Plaintiff points to a line in an email documenting her poor performance from her former supervisor, Mr. Poisson, which states that "if we need to rework on it for further purpose, I am available to practice on it." Plaintiff argues this sentence is evidence that Defendant was intentionally papering her file to provide a basis for her subsequent termination. However, the rest of the email suggests instead that Mr. Poisson—evidently not a native English speaker—meant that he was willing to edit the email to make it more suitable for Plaintiff to read. (Doc. No. 20-3 at 71.)

Another series of cases held that "after-the-fact documentation cannot be evidence to justify a demotion because of disciplinary problems." *Evans v. City of Houston*, 246 F.3d 344, 355 (5th Cir. 2001) (noting that the documentation relied on by the defendant was written *after* the plaintiff engaged in the protected activity and *after* the adverse employment action was taken); *see also Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 237 (5th Cir. 2016) ("An employer generally will satisfy its burden of production with "contemporaneous written documentation."); *Gibson v. Leson Chevrolet Co.*, 2017 WL 1177910 (E.D. La. Mar. 30, 2017) ("Generally, an employer will satisfy its burden by providing contemporaneous written documentation rather than after-the-fact documentation."); *Forrest v. Dynamic Sec. Corp.*, 2002 WL 1204917 at *9 (E.D. La. May 2, 2002) ("The Fifth Circuit has found that 'after-the-fact' documentation is insufficient to justify an adverse employment action because of disciplinary problems.").

The documentation relied on by Defendant was generated prior to Plaintiff's termination. However, the documentation was not "contemporaneous" with the errors in Plaintiff's work, but instead referenced instances further in the past. Defendant alleges Plaintiff received a "zero" on the quiz about cost-control principles, but provides no evidence that Plaintiff's score was discussed by her supervisors shortly after it was graded or reviewed with Plaintiff. Plaintiff has stated that she was never returned the graded quiz and never learned her quiz results, although she remembers struggling to answer some questions. (Doc. No. 20-3 at 8-9.) Neither does Defendant actually introduce the scored quiz. (Doc. No. 19-1 at 139-40, 210.) Similarly, the Defendant's allegation that Plaintiff made numerous errors on the LLOG Who Dat project is not substantiated by any contemporaneous documentation, but only by subsequent statements from Plaintiff's supervisors. (Doc. No. 19-1 at 135, 184-85.) *See Laxton v. Gap Inc.*, 333 F.3d 572,

581 (5th Cir. 2003) (finding a jury issue where "as the alleged violations of store policy occurred, Laxton's supervisors . . . did not discuss them with her"). Plaintiff alleges that the first she heard of Defendant's complaints about her performance was an email, one month before her firing, sent by her manager in which he told her he did not feel she deserved a raise, without mentioning any specific examples of deficient performance. (Doc. No. 20-3 at 11, 66-68, 76-78.)

The suspicious email from Mr. Totten, combined with the lack of contemporaneous documentation of Plaintiff's performance issues, might ordinarily be enough to raise a "substantial fact issue" as to whether Defendant's proffered justification was pretextual. *Haire*, 719 F.3d at 369; *see also Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 43 (5th Cir. 1992) ("We find it surprising that suddenly, after Shirley filed her EEOC complaint, problems with her work surfaced."). However, Defendant in this case is entitled to the "same-actor inference," which states that "where, as here, the same actor hires and fires an employee, an inference that discrimination was not the employer's motive in terminating the employee is created." *Faruki v. Parsons S.I.P., Inc.*, 123 F.3d 315, 321 (5th Cir. 1997). Here, Mr. Totten had ultimate hiring and firing authority over Plaintiff, although other individuals were influential in his decisions both to hire Plaintiff and ultimately terminate her employment. (Doc. No. 20-3 at 36.)

Plaintiff argues that the same-actor inference does not apply because her report of discrimination broke the chain of causation justifying the inference. However, that is an argument more appropriate for her retaliation claim, as she has presented no evidence of a valid comparator who submitted a discrimination claim and was not fired.

To overcome the same-actor inference, a plaintiff must present "evidence of sufficiently egregious facts." *Curry v. Telect, Inc.*, 2009 WL 1659344 (N.D. Tex. June 15, 2009). Plaintiff

11

has not presented evidence of egregious discrimination sufficient to overcome this inference. *See e.g. Wojcik v. Costco Wholesale Corp.*, 2015 WL 1511093 (N.D. Tex. Apr. 2, 2015) (finding that plaintiff presented evidence of sufficiently egregious facts to overcome the inference where he introduced evidence that his manager repeatedly made derogatory comments about his age and about other older individuals); *Curry*, 2009 WL 1659344, at *5 (finding that sufficiently egregious facts where the plaintiff presented evidence that the defendant had "threaten[ed] a coworker to keep him from revealing the employer's lie"). Thus, there is no genuine dispute of material fact regarding Plaintiff's disparate treatment claim.

## IV. RETALIATION CLAIM

### A. APPLICABLE LAW

Title VII prohibits an employer from retaliating against employees who have engaged in a protected activity under the statute. 42 U.S.C. § 2000e–3(a) (2018). When a plaintiff claiming retaliation does not have direct evidence of retaliatory motive, the *McDonnell Douglas* burden-shifting framework applies. *Montemayor v. City of San Antonio*, 276 F.3d 687, 692 (5th Cir. 2001). To establish a *prima facie* case of retaliation, the plaintiff must show that "(1) the employee engaged in activity protected by Title VII; (2) the employer took adverse employment action against the employee; and (3) a causal connection exists between the protected activity and the adverse employment action." *Zamora v. City of Houston*, 798 F.3d 326, 331 (5th Cir. 2015).

The "causation prong of a retaliation claim" requires that the plaintiff "demonstrate that the employer knew about the employee's protected activity." *Manning v. Chevron Chem. Co., LLC¸* 332 F.3d 874, 883 (5th Cir. 2003). Further, the protected activity must be a "but-for" cause

12

of the alleged adverse employment action. *Zamora v. City of Houston*, 798 F.3d 326, 331 (5th Cir. 2015). "Close timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a *prima facie* case of retaliation." *Swanson v. General Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997).

### B. ANALYSIS

#### 1. CAUSAL CONNECTION BETWEEN PROTECTED ACTIVITY AND TERMINATION

Plaintiff engaged in protected activities when she reported alleged instances of racial discrimination, first in her letter to Human Resources, and shortly thereafter in a meeting with her managers. *See EEOC v. EmCare, Inc.*, 857 F.3d 678, 683 (5th Cir. 2017) (acknowledging that "making complaints to HR" was a protected activity); *Lopez v. Donahoe*, 94 F. Supp. 3d 845, 859 (S.D. Tex. Mar. 23, 2015) (finding that mail carrier's signed letter to postmaster's supervisors "complaining of [postmaster's] allegedly racist behavior" was a protected activity); *Arango v. Telemundo El Paso*, 20 F. Supp. 3d 559, 568 (W.D. Tex. Dec. 30, 2013) (finding that the plaintiff's complaints to the director of Human Resources and to the General Manager about sex discrimination and harassment in the workplace were protected activities). Plaintiff's termination constituted an adverse employment action. *See Pegram v. Honeywell, Inc.*, 361 F.3d 272 (5th Cir. 2004) ("[I]t is beyond dispute that a termination constitutes an adverse action."). The crux of Defendant's argument is instead that Plaintiff has not established a causal connection between her complaints of discrimination and her termination. (Doc. No. 19 at 17.)

Plaintiff has established that the individuals who terminated her knew of her protected activity. In the April 23 meeting, Plaintiff communicated her complaints of racial discrimination directly to Mr. Totten and Mr. Wiffin, who decided to fire her several months later. (Doc. No.

19-1 at 193, 201-03.) Although this occurred a few days after Plaintiff submitted her letter to Human Resources, Plaintiff's managers first learned Plaintiff suspected racial discrimination at this meeting. Additionally, evidence in the record shows that although Mr. Totten and Mr. Wiffin may not have seen the letter Plaintiff submitted to Human Resources, they were subsequently informed of the content of her letter. (Doc. No. 19 at 17.) Mr. Totten testified that, after Plaintiff met with him and Mr. Wiffin to discuss her concerns about racial discrimination in the department, he was told by the head of Human Resources that Plaintiff had submitted a letter complaining of discrimination. (Doc. No. 19-1 at 193.)

Plaintiff submitted her letter to Human Resources on April 21, 2014, and met with Mr. Wiffin and Mr. Totten on April 23, 2014. (Doc. No. 19-1 at 46, 131.) She was fired on August 11, 2014, about four months after the protected activities. (Doc. No. 19-1 at 62.) The Fifth Circuit has found "a time lapse of up to four months . . . sufficient to satisfy the casual connection for summary judgment purposes." *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001) (quoting *Weeks v. NationsBank, N.A.*, 2000 WL 341257, at *3 (N.D. Tex. 2000)). Thus, the time lapse here of less than four months is sufficient to meet the "very minimal showing" required to establish a *prima facie* case of discrimination. *Thornbrough v. Columbus & Greenville R.R. Co.*, 760 F.2d 633, 639 (5th Cir. 1985), *abrogated on other grounds by St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993).

*2. WHETHER DEFENDANT'S PROFFERED REASON WAS PRETEXTUAL*

As with Plaintiff's claim of disparate treatment, Defendant attempts to rebut the retaliation claim by alleging that Plaintiff was terminated due to poor performance. For the reasons discussed above, the post-termination email from Mr. Totten, the lack of

contemporaneous documentation of Plaintiff's alleged poor performance, and the short time lapse between the Plaintiff's complaints of discrimination and her termination create a significant fact issue as to whether Defendant's stated reason for Plaintiff's termination was pretextual. *See Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 409 (5th Cir. 1999) ("[T]he combination of suspicious timing with other significant evidence of pretext can be sufficient to survive summary judgment.").

## V. CONCLUSION

Defendant's motion for summary judgment on Plaintiff's Title VII claims is **GRANTED** as to Plaintiff's disparate treatment claims, but **DENIED** as to Plaintiff's retaliation claim.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on the 2nd of January, 2019.

HON. KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE